IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRAS M. AYOUBI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 CV 4306 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| CARLOS ALTEZ, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Firas Ayoubi ("Plaintiff") sues physician assistant Carlos Altez ("Altez"), Cook County Sheriff Thomas Dart ("Dart"), Chairwoman of the Department of Correctional Health at Cermak Health Services of Cook County ("Cermak") Dr. Connie Mennella ("Mennella"), and Cook County (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 for deliberate indifference to Plaintiff's objectively serious medical need. In particular, the claim against Altez is in his individual capacity for treatment of Plaintiff's condition allegedly in violation of Plaintiff's Fourteenth Amendment rights; the claims against Dart and Mennella are in their official capacities for alleged systemic deficiencies at the Cook County Department of Corrections ("CCDOC") and Cermak; and Cook County remains in this litigation for indemnification purposes only. Before the Court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

**I. BACKGROUND**

Plaintiff, a thirty-one-year-old male, has been detained at the CCDOC since December 2012. Altez served as a licensed physician assistant at Cermak, Dart is the Cook County Sherriff, and Mennella chaired the Department of Correctional Health at Cermak. In roughly

August 2013, Plaintiff developed a one-centimeter lump beneath the areola of his left nipple. He described the pain associated with the lump as an uncomfortable prickling pain and burning feeling. At another time, he characterized the pain as "like getting pricked with a needle from the inside out." Pl.'s Resp. to Defs.' Statement of Facts ("PRDSOF") ¶ 4. In other instances, Plaintiff described the pain as discomfort. Deposition testimony shows that on some occasions Plaintiff stated that his pain was constant and at other times sporadic. It never in any way interfered with his daily activity as an inmate.

On January 15, 2014, Plaintiff received medical treatment for a different health problem, but he did not notify the medical provider about the lump. On February 1, 2014, Plaintiff filled out a Health Service Request ("HSR") seeking treatment for the painful lump. The HSR indicated increasing pain and size. The next day, Plaintiff saw Nurse Elizabeth Santos ("Santos") and asked for pain medication. Santos declined to provide pain medication at this initial appointment. Instead, Santos booked an appointment for Plaintiff to see Altez on February 26, 2014. On February 13, 2014, Plaintiff completed another HSR in which he reiterated his pain and stated that he had not received pain medication. On February 15, 2014, later Santos gave Plaintiff twelve 200mg tablets of ibuprofen.

On February 26, 2014, Plaintiff saw Altez regarding the lump. Plaintiff's vitals were taken prior to seeing Altez. At the appointment, Altez conducted a physical examination of Plaintiff's chest, including the areola. Altez ultimately diagnosed Plaintiff with gynecomastia. Gynecomastia is the excessive growth of the male mammary glands, generally associated with metabolic derangements that lead to estrogen accumulation, testosterone deficiency, and hyperprolactinemia. In some cases, gynecomastia may develop to the stage at which milk is produced, commonly called lactation. Although not as common in males in their twenties, as

Plaintiff was at the time of his February 26, 2014 diagnosis, the condition is relatively common among infants, adolescents, and men over fifty.

Altez's treatment notes indicate that Plaintiff complained of sharp and intermittent chest pain. Plaintiff alleges that Altez made light of Plaintiff's condition by laughing while asking whether Plaintiff was lactating and that he was embarrassed as a result of Altez's asking such a question. Plaintiff asked Altez for pain medication but claims that Altez declined to provide the medication at that point. However, Altez did prescribe the antibiotic clindamycin, which is used to treat serious infections. Altez also ordered several blood tests, including a complete blood count with differential to test Plaintiff's blood cell and platelet count, a follicle-stimulating hormone test to evaluate Plaintiff's testicular function and spermatozoids production, and a thyroid stimulate hormone test to determine if Plaintiff had thyroid abnormalities. Additionally, Altez ordered an ultrasound of Plaintiff's left breast and nipple, which took place on March 4, 2014, six days later. The ultrasound was used to confirm the gynecomastia diagnosis and to rule out other (and potentially malignant) breast conditions such as cancer or an abscess. Plaintiff's deposition also reflects that he underwent a second ultrasound to check his other breast. Plaintiff was scheduled for a follow-up appointment on March 19, 2014. He was not treated with pain medication in the interim.

At the March 19, 2014 appointment, Altez discussed the ultrasound results with Plaintiff. The results confirmed the gynecomastia diagnosis. The test did not reveal any other abnormalities. Plaintiff asserts that Altez made additional embarrassing comments and again did not prescribe pain medication. For example, Plaintiff claims that Altez stated that Plaintiff could handle the condition because he is a "big boy," id. at 63:10, that the hospital was not "University of Chicago Hospital," PRDSOF, Ex. B, 63:21-64:1, and that Altez fist-bumped him, presumably

3

an alternative to a handshake. While the "big boy" term should have been buttoned, that the prison treatment center was not the "University of Chicago Hospital" was starkly accurate. Ultimately, Plaintiff alleges that the bases of his deliberate indifference claim as to the March 19, 2014 visit are the aforementioned comments and gestures by Altez and Altez's decision not to prescribe the amount of medication Plaintiff desired.

Altez informed Plaintiff that if the gynecomastia did not go away on its own, Plaintiff could have a surgeon "cut it off." Id. at 55:24-56:6. Liposuction and mastectomies are treatment options when gynecomastia persists. Plaintiff was later taken to a plastic surgeon at Stroger Hospital for a consultation the regarding the surgical removal of the growth on his areola. He informed the plastic surgeon that he would consider the possibility. Ultimately, Plaintiff declined the surgical removal of the lump beneath the areola of his nipple because he "was worried about the scar for cosmetic reasons." Id. at 71:11-12. He was also concerned after the plastic surgeon informed him about the risks attendant to surgery, which is routine medical practice in order to obtain informed consent from a patient.

Contrary to Altez's medical opinion, Plaintiff alleges that gynecomastia is a serious condition. Plaintiff stated at his deposition that his sources for this conclusion are articles that his former cellmate provided to him. Plaintiff also could not remember the authors of any of these articles. In his deposition, however, Plaintiff acknowledges that the gynecomastia did not limit him at all outside of experiencing pain, embarrassment, and repeatedly visiting outside hospitals.

After declining surgery, on April 9, 2014, Plaintiff submitted another HSR, claiming constant and severe pain and stating that he had not received pain medication. In response, Plaintiff was scheduled for an appointment with Nurse Lisa Locke ("Locke"). Locke did not

4

provide pain medication. On April 30, 2014, however, Santos gave Plaintiff another twelve 200mg tablets of ibuprofen, though Plaintiff asserts that it was for an unrelated ailment. On June 3, 2014, Plaintiff was prescribed pain medication for his gynecomastia. The record reflects that Altez took notes on his computer "on every visit," id. at 56:20-21, in order to maintain computerized records of Plaintiff's treatment.

Plaintiff was also able to purchase eight pain pills per week from the CCDOC commissary for the duration of the treatment at issue. The commissary sold two pills for about 45 cents. Plaintiff stated in his deposition he accessed the commissary for these pills "regularly." Id. at 134:18. Additionally, he acknowledged that "the pain medicine the nurse was giving me, the Tylenols or Advil packs [were] . . . several packs more than I'm allowed to buy on the commissary. . ." Id. at 166:17-20.

In sum, Plaintiff received numerous tests, declined the surgical removal of the growth on his areola, and consistently received and purchased pain and other medication. That notwithstanding, Plaintiff alleges that Altez was deliberately indifferent because Altez failed to treat to Plaintiff's pain and made light of Plaintiff's condition. Plaintiff submitted his Complaint on June 9, 2014.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

5

nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id.

**B. Plaintiff's Deliberate Indifference Claim Fails to Demonstrate Both an Objectively Serious Condition and a Sufficiently Culpable State of Mind as Required to Establish a Violation of His Constitutional Rights**

Plaintiff was a pretrial detainee at the time of the treatment at issue in this case. Pretrial detainees are protected by the Fourteenth Amendment, rather than the Eighth Amendment's protection from cruel and unusual punishment, which applies only to people who have been convicted. Henderson v. Sheahan, 196 F.3d 839, 844 n. 2 (7th Cir. 1999) (citation omitted). However, a Fourteenth Amendment claim brought pursuant to § 1983 is analyzed under the Eighth Amendment's test for deliberate indifference. Id. at 844. Jail officials have the duty to "'provide humane conditions of confinement' for [detainees]." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The jail officials' duty includes, among other things, the obligation to ensure adequate medical care. Id.

Deliberate indifference claims have both an objective and subjective component. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). The objective component requires a showing that the "medical condition is 'objectively, sufficiently serious.'" Id. (quoting Farmer, 511 U.S. at 834). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's

6

attention." Id. (citation omitted). "To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 837). "The officials must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" Id. Officials need not have intended the harm; knowing disregard of the risk is sufficient. Id. (citation omitted).

### i. Plaintiff's Gynecomastia Was Not Objectively Serious

The Court first addresses whether the medical condition alleged is objectively, sufficiently serious. Plaintiff asserts that his condition meets the objective prong because (1) a lay person can recognize that the growth of painful breast tissue necessitates a doctor's attention, and Altez actually diagnosed Plaintiff with gynecomastia and determined that the condition required treatment; and (2) Plaintiff's condition negatively impacted his daily activities due to constant pain.

The Court rejects Plaintiff's argument. First, although Plaintiff is correct that Altez diagnosed the condition and determined that Plaintiff required treatment, Plaintiff's symptoms, as explained in medical literature *infra*, do not rise to the objective level of seriousness needed to find a constitutional violation. Second, Plaintiff's deposition testimony belies his contention that his gynecomastia impinged on his daily activities.

Plaintiff provides inconsistent statements regarding the type and consistency of his pain. As to the consistency, at different times, Plaintiff complained of consistent chest pain and intermittent chest pain. Plaintiff stated on some occasions that the pain manifested itself in a prickling and burning feeling. In other instances, Plaintiff referred to the pain as discomfort. As an initial matter, the Seventh Circuit, albeit in the context of smoke inhalation, has held that

7

chest pains "are, objectively speaking, relatively minor . . . they are not the sort of objectively serious injury or medical need that amounts to a denial of the minimal civilized measure of life's necessities necessary to state a violation of the Fourteenth Amendment." Henderson, 196 F.3d at 846 (internal citations and quotation marks omitted).

According to the Mayo Clinic,[1] "[g]enerally, gynecomastia isn't a serious problem, but it can be tough to cope with the condition" due to pain and embarrassment. http://www.mayoclinic.org/diseases-conditions/gynecomastia/home/ovc-20257576 (last visited 2/22/2017). The Clinic explains that most cases of gynecomastia regress over time without treatment. http://www.mayoclinic.org/diseases-conditions/gynecomastia/diagnosis-treatment/treatment/txc-20257778 (last visited 2/22/2017); see also http://www.merckmanuals.com/home/men-s-health-issues/biology-of-the-male-reproductive-system/breast-disorders-in-men (last visited 2/22/17) ("Generally, no specific treatment is needed. Breast enlargement often disappears on its own or after its cause is identified and treated."). Should the condition persist, however, medication or surgery may help. http://www.mayoclinic.org/diseases-conditions/gynecomastia/diagnosis-treatment/treatment/txc-20257778 (last visited 2/22/2017); see also http://www.merckmanuals.com/home/men-s-health-issues/biology-of-the-male-reproductive-system/breast-disorders-in-men (last visited 2/22/17) ("Surgical removal of excess breast tissue is effective but rarely necessary."). Finally, Mayo Clinic states that the condition "has few physical complications, but it can cause psychological or emotional problems caused by appearance." http://www.mayoclinic.org/diseases-conditions/gynecomastia/symptoms-causes/dxc-20257772 (last visited 2/22/2017).

---

[1] The Court takes judicial notice of facts presented by Mayo Clinic and the Merck Manual pursuant to Federal Rule of Evidence 201.

8

The medical literature indicates that the condition is not considered serious by medical professionals, often requires no treatment, and is not likely to pose serious physical complications. Plaintiff fails to articulate any greater medical risk stemming from his chest pain, which undermines his claim. See Gutierrez v. Peters, 111 F.3d 1364, 1372 (7th Cir. 1997) (Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim. . ."). Absent the ability to show more than some chest discomfort or a risk of greater harm as a result thereof, the Court does not find Plaintiff's physical symptoms materially distinguishable from the Seventh Circuit's treatment of smoke-induced chest pains in Henderson.[2] Accordingly, the Court rejects Plaintiff's contention that his condition rises to the level of seriousness required to prevail on a deliberate indifference claim.

Moreover, Plaintiff fails to support his contention that the condition is serious with any reliable evidence. Plaintiff asserted at his deposition that gynecomastia is a serious medical condition. In response to an inquiry regarding his evidence to support that position, Plaintiff explained that he had read articles which stated that gynecomastia was a serious, painful condition. However, Plaintiff never named the title of any such articles and admitted that he could not recall the author of any of the materials that he read. Plaintiff additionally conceded at his deposition that he did not obtain the articles from a medical professional or anyone with a background in science; rather, his former layperson cellmate provided the unidentified literature. Without any evidence from a reliable source to establish the seriousness of his condition, Plaintiff sets forth no more than his own subjective opinion. Thus, the Court rejects Plaintiff's attempt to establish the objective seriousness of his condition.

---

[2] Because Plaintiff at times characterized his chest pain as a prickling and burning feeling, the Court notes that the plaintiff in Henderson also experienced discomfort from burning sensations in his throat. Henderson, 196 F.3d at 842. In rejecting the deliberate indifference claim, the Henderson court found that both the plaintiff's chest pain and the burning sensations in his throat (in addition to other ailments) were not objectively, sufficiently serious. See id. at 846.

9

Plaintiff also argues that his "condition negatively impacted his daily life, making even basic daily activities—such as putting on a shirt or lying down in bed—very painful." Pl.'s Mem. in Opp. at 8; see also PRDSOF, Ex. A, Decl. of Firas Ayoubi at ¶ 7. Plaintiff's assertion is based upon his affidavit. However, that sworn testimony is contradicted by his previous deposition testimony. Plaintiff was asked at his deposition whether gynecomastia "limited him in any way from activities that [he] previously used to do." PRDSOF, Ex. B, 142:12-14. In response, Plaintiff stated, "[t]here's not really much [sic] activities to do in jail. Really just the pain associated with it and the obvious embarrassment and humiliation from it, physical observation of it, and then, now, the repeated visits to the outside hospital. . . .*It's not limiting me . . .* it's not like it's not allowing me to walk or anything like that." Id. at 142:15-23 (emphasis added). Because Plaintiff overtly testified that his condition does not limit him, his assertion that the gynecomastia restricted his daily activities cannot support his claim that his condition is objectively serious.

As set forth above, Plaintiff's arguments fail to establish the objective prong of a deliberate indifference claim. "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583, 591 (7th Cir. 2016) (internal citations and quotation marks omitted). Because Plaintiff fails to do so, summary judgment in favor of Altez is proper.

### ii. Altez Did Not Have a Sufficiently Culpable State of Mind

Assuming *arguendo* that Plaintiff suffered from an objectively serious medical condition, he still cannot satisfy the subjective prong because Altez did not disregard whatever risk existed; rather Altez's course of treatment fell squarely within his medical discretion. Plaintiff argues

that Altez failed to prescribe pain medication for Plaintiff's gynecomastia despite knowing that Plaintiff was in serious and constant pain. Plaintiff also asserts that Altez's unprofessional humor and off-hand comments demonstrate that Altez did not take Plaintiff's condition seriously and was therefore deliberately indifferent. Additionally, although Plaintiff does not sue Santos, Locke, or any other medical professional involved in his treatment, he attempts to buttress his deliberate indifference allegations based on his interactions with the other medical professionals. The Court thus addresses his treatment allegations as a whole. The record reveals that the medical attention Plaintiff received belies his claim, and Altez's comments do not give rise to a constitutional infraction.

First, Altez's treatment of Plaintiff was thorough and sought to identify the condition and ensure that Plaintiff did not suffer from serious complications. Negligence is insufficient to prove deliberate indifference, Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016), nor does medical malpractice transform into a constitutional infraction "merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Altez and other medical professionals consistently examined Plaintiff and provided treatment within their professional discretion. Plaintiff does not dispute that Altez examined him approximately five times.[3] PRDSOF, Ex. B, 44:5-9 (In response to whether Plaintiff saw Altez five times, Plaintiff stated, "[i]f that's what the record reflects, then I would not dispute that"). Altez first examined Plaintiff on February 26, 2014, where he provided his initial diagnosis of gynecomastia. While Plaintiff complains that Altez did not prescribe pain medication at the initial examination, Altez elected to prescribe Plaintiff Clindamycin, an antibiotic used to treat serious infections. Altez also ordered a complete blood count with differential to test Plaintiff's

---

[3] Certain of these appointments took place after the period of time on which Plaintiff's claims rely. Nonetheless, the visits still demonstrate Altez's continuing treatment of Plaintiff.

blood cell and platelet count, a follicle-stimulating hormone test to evaluate Plaintiff's testicular function and spermatozoids production, and a thyroid stimulant hormone test to determine if Plaintiff had thyroid abnormalities. Finally, Altez conducted ultrasound to fortify his diagnosis. Blood tests and ultrasounds[4] are an initial diagnostic tool for gynecomastia. http://www.mayoclinic.org/diseases-conditions/gynecomastia/diagnosis-treatment/diagnosis/dxc-20257783 (last visited 2/22/2017); PRDSOF, Ex. D, 49:15-50:16 (providing Altez's medical explanation for conducting an ultrasound). Additionally, the extensive testing ordered by Altez protected against and ruled out other, more serious conditions.

Plaintiff's challenge that Altez should have prescribed pain medication is a nonstarter. Altez sought to protect Plaintiff against more serious complications, and Plaintiff's mere disagreement with Altez's course of action cannot amount to deliberate indifference. See Greeno, 414 F.3d at 653 (mere disagreement with medical judgment does not amount to deliberate indifference); see also PRDSOF, Ex. B, 53:16-22 (Plaintiff states "[H]e prescribed me [C]lindamycin. I mean, that's, you know, his medical opinion. That's fine. . . .It's not really [this] incident that supports the deliberate indifference. It's more like all the incidents combined to show the big picture. . . . ); id. at 53:23-54:12 (The deliberate indifference on this date was "[t]he joking [regarding lactation], at first, was really the indication. . ."). Thus, Altez's decision to take precautions against more serious complications evinces Altez's concern for Plaintiff's wellbeing, particularly in light of the fact that gynecomastia itself often has no specific treatment.

On March 19, less than a month later, Altez provided additional detail during the second appointment. There, Altez confirmed the diagnosis of mild gynecomastia, explained that the condition often resolves on its own, advised that the condition was benign and not infected, and

---

[4] The Mayo Clinic indicates that mammograms are typically used for breast imaging and ultrasounds for testicular imaging. However, an ultrasound can also image the chest, and Altez's deposition expresses his medical explanation for the use of an ultrasound.

12

assured Plaintiff that all tests were normal other than the gynecomastia. Although gynecomastia often resolves itself and does not pose a substantial risk of serious complications, Altez also told Plaintiff that if the condition did not resolve itself, Plaintiff could "cut it off." Id. at 55:24-56:6. Surgical removal—either via liposuction or mastectomy—is a treatment option when gynecomastia persists. The record shows that Plaintiff understood this option and took the opportunity to consult a plastic surgeon at Stroger. Ultimately, Plaintiff rejected surgery because he "was worried about the scar for cosmetic reasons." Id. at 71:11-12. He also expressed concern regarding the surgeon's explanation of surgical risks.

Plaintiff's referral to the plastic surgeon demonstrates that he received a treatment option that could mitigate his pain and embarrassment as a result of the gynecomastia. A concern regarding cosmetic scarring does nothing to negate the fact that Plaintiff was provided with a treatment option both within the medical professional's discretion and supported by medical literature. And, the explanation of risks attendant to surgery demonstrates the surgeon's concern for Plaintiff's condition and desire to fully inform Plaintiff regarding the procedure. Plaintiff thus rejected a reasonable course of treatment recommended by Altez and the plastic surgeon and at best states a preference for pain medication. He has therefore not put forth evidence suggesting "the obviousness of the risk from a particular course of medical treatment; [Altez's] persistence in a course of treatment known to be ineffective; or proof that [Altez's] treatment decision departed so radically from professional judgment, practice, or standards that a jury may reasonably infer that the decision was not based on professional judgment." Whiting, 839 F.3d at 663 (internal quotations and citations omitted); see also Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261–62 (7th Cir. 1996) ("[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's

13

decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.") Again, the fact that Plaintiff did not receive his preferred treatment does not support a constitutional claim. See Greeno, 414 F.3d at 653; see also Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003) (alleged disagreement with medical professionals about plaintiff's needs does not state a cognizable deliberate indifference claim). Accordingly, the opportunity to have the growth removed further undermines Plaintiff's claim.

The totality of Plaintiff's treatment also undermines Plaintiff's contention that Altez had the requisite subjective state of mind. Plaintiff's assertion that Altez was deliberately indifferent because he did not prescribe sufficient pain medication is contradicted by Plaintiff's ongoing receipt of Tylenol, Advil, or ibuprofen from other medical professionals.

Plaintiff received pain medication on several occasions throughout the duration of his medical treatment. On February 15, 2014, Santos provided Plaintiff with twelve 200mg tablets of ibuprofen in response to his HSR submitted just two days earlier. On April 30, 2014, Santos gave Plaintiff another twelve 200mg tablets of ibuprofen, albeit for Plaintiff's complaint regarding a separate medical issue. On June 3, 2014, Plaintiff was prescribed medication as part of his treatment for the gynecomastia. Between visits to the medical professionals, Plaintiff admitted that he was able to purchase pain pills weekly from the CCDOC commissary and stated in his deposition that he did so regularly. Furthermore, Plaintiff admitted in his deposition that "the pain medicine the nurse was giving me, the Tylenols or Advil packs [were] . . . several packs more than I'm allowed to buy on the commissary. . ." PRDSOF, Ex. B, 166:17-20. Plaintiff asserts that he was not prescribed medication for the gynecomastia pain until June 3, 2014 and that Altez should have prescribed pain medication rather than (or in addition to) the

14

course of treatment provided. However, Plaintiff's medication orders reflect that he was regularly given ibuprofen by various medical professionals (in addition to the medicine provided by Santos), including on dates before and after June 3, 2014. On July 31, 2013, Plaintiff received 600mg tablets of ibuprofen; on December 4, 2013, Plaintiff received 400mg tablets of ibuprofen; on January 15, 2014, Plaintiff received 400mg tablets of ibuprofen; on June 18, 2014, Plaintiff received 600mg tablets of ibuprofen; on August 27, 2014, Plaintiff received 400mg tablets of ibuprofen; on April 7, 2015, Plaintiff received 400mg tablets of ibuprofen; and on July 21, 2015, Plaintiff received 400mg tablets of ibuprofen. PRDSOF, Ex. M, CCSAO at 244-46. Given Plaintiff's extensive and continuous receipt of pain medication, the Court finds no support for the proposition that Defendants deliberately withheld treatment in order to inflict pain upon Plaintiff.

That Altez declined to provide additional pain medication while other medical professionals were providing Plaintiff with ibuprofen further demonstrates that Altez was not recklessly disregarding Plaintiff's gynecomastia. See Perez v. Fenoglio, 792 F.3d 768, 777 (7th Cir. 2015) ("The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard.") (citation omitted). Rather, it underscores that Plaintiff's desire for more pain medication than he received "[a]t best [] alleges a disagreement with medical professionals about his needs. This does not state a cognizable Eight Amendment [in this case, Fourteenth Amendment] claim under the deliberate indifference standard. . ." Ciarpaglini, 352 F.3d at 331; PRDSOF, Ex. B, 164:21-24 ("Well, when Mr. Altez wasn't providing adequate pain medicine to suppress the pain that he knew existed. It wasn't the fact that I was not prescribed pain medication at all."); PRDSOF, Ex. B, 74:17-19 (stating Altez did not prescribe an adequate

15

amount of pain medicine). The Court is unaware of any judicial decision stating that prisoners are entitled to the particular amount of pain medication that *they* deem necessary, and Plaintiff produces no case law supporting that proposition.

Additionally, in his deposition, Plaintiff *complained* of pain, embarrassment, and *"repeated visits to the outside hospital."* PRDSOF, Ex. B, at 142:18-19 (emphasis added). Repeated treatment represents the antithesis of deliberate indifference. See Flayter v. Wisconsin Dep't of Corr., 16 F. App'x 507, 509 (7th Cir. 2001) (granting motion to dismiss because the plaintiff "pleaded himself out of court. . . . [Plaintiff] was seen by DOC personnel on numerous occasions, underwent numerous procedures, *was sent to a number of outside doctors for examination*, and received various medications for his pain.") (emphasis added). For these additional reasons, which consider Altez's medical decisions in the context of the totality of Plaintiff's treatment, Plaintiff fails to establish the sufficiently culpable state of mind necessary to satisfy the subjective prong of the deliberate indifference standard. See Smith v. Gomez, 550 F.3d 613, 619 (7th Cir. 2008) (Section 1983 does not create a claim based on collective or vicarious responsibility).

To the extent Plaintiff's assertion of deliberate indifference rests on an alleged delay in the provision of pain medication, the claim still fails. A delay in the provision of medical treatment for painful condition may give rise to a deliberate indifference claim. Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009) (citation omitted). "However, the action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay." Id. (citations omitted). The exacerbation a plaintiff's pain may be sufficient harm. See Williams v. Liefer, 491 F.3d 710, 715-716 (7th Cir. 2007). Expert testimony stating that the plaintiff suffered due to a delay in treatment meets the requirement. Id.

16

at 715 (citation omitted). "On the other hand, evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him." Id. (citation omitted).

In his brief, Plaintiff states that Altez did not prescribe pain medication between the February 26, 2014 and March 19, 2014 appointments and that he did not receive any pain medication between April 30, 2014 and June 3, 2014. Plaintiff also complained in his deposition that "[i]t wasn't the fact that I was not prescribed pain medication at all. It was just the delayed prescribing of the pain medicine and the lack of pain medicine, is what I'm complaining about." PRDSOF, Ex. B, 164:23-165:2. However, medical professionals within a penal institution need not accede to every request for a prescription drugs. See Greeno, 414 F.3d at 653 (mere disagreement with a doctor's medical judgment does not amount to deliberate indifference). See also Estate of Miller by Chassie v. Marberry, 847 F.3d 425 (7th Cir. 2017) ("Prisoners can be manipulative, using deceit to obtain advantages; guards are accordingly entitled to be skeptical."). Altez and the medical staff doled out pain medication at the times and in the amount they, in their medical opinions, deemed necessary for a condition the rarely presents serious complications and that often even regresses over a two-year period without treatment. That combined with the extensive testing, monitoring, and opportunity for plastic surgery was well within "accepted professional judgment, practice, or standards." Fromm, 94 F.3d at 262 (7th Cir. 1996); see also http://www.mayoclinic.org/diseases-conditions/gynecomastia/diagnosis-treatment/treatment/txc-20257778 (last visited 2/22/2017) ("Gynecomastia often goes away without treatment in less than two years. However, treatment may be necessary if gynecomastia doesn't improve on its own or if it causes significant pain, tenderness or embarrassment.")

(listing potential medications). Thus, Plaintiff fails to demonstrate a delay in treatment; rather, he only establishes that he disagreed with the course of treatment that he received.

Even if Plaintiff had shown a delay in his treatment, he fails to provide evidence that his condition worsened as a result thereof. Plaintiff offers only his anecdotal statement of worsening pain in support of his contention that Altez's alleged delay warrants a finding of deliberate indifference. Here, while there is no expert testimony, Plaintiff asserts no more than a "bare recitation of the treatment received." Liefer, 491 F.3d at 715. The full record, however, shows that the treatment did not worsen Plaintiff's condition. All of the tests ordered by Altez came back negative with the exception of the gynecomastia. In response to whether he has developed any additional gynecomastia, Plaintiff stated in his deposition that the condition "hasn't made any tremendous changes," and he indicated that the condition had not developed on his right side. PRDSOF, Ex. B, 171:3-12. Accordingly, the medical evidence shows that, even if there was a delay, it did not cause Plaintiff's condition to worsen.

Plaintiff's allegations that Altez made unprofessional, off-hand comments also fail to support his claim because they do not demonstrate that Altez did not take Plaintiff's condition seriously. Plaintiff claims that Altez fist-bumping Plaintiff, laughing when Altez asked Plaintiff if his gynecomastia caused him to lactate, and calling Plaintiff a "big boy" is indicative of deliberate indifference. Viewed by Plaintiff, the question whether he was lactating is offensively embarrassing. However, objectively viewed, it is an appropriate, legitimate inquiry regarding a symptom of gynecomastia, which is widely recognized within the medical profession. To the ill-advised layperson, routine questions regarding bodily functions should be avoided. As to Altez allegedly laughing, the Seventh Circuit recently ruled that laughing at a patient does not establish a medical professional's deliberate indifference. In Harper v. Santos, the court found that the

plaintiff's assertion that a nurse laughed at him did not establish that she acted with deliberate indifference. No. 15-1903, 2017 WL 568335, at *4 (7th Cir. Feb. 13, 2017). Additionally, in Townsend v. Cooper, the Seventh Circuit found that laughing at a patient and accusing him of making things up in response to complaints regarding hearing voices did not meet the deliberate indifference standard. 759 F.3d 678, 684, 688-90 (7th Cir. 2014). Thus, Altez's actions, even if unprofessional, do not support a finding of deliberate indifference.

Finally, Plaintiff alludes to embarrassment and psychological difficulties associated with his gynecomastia throughout his pleadings. Such difficulties coping do not alter the deliberate indifference calculus because Plaintiff never sought treatment for psychological problems. In his deposition, Plaintiff admitted that he had access to a mental health specialist and that he elected not to pursue medical treatment for psychological problems associated with his gynecomastia. Specifically he stated, "I mean, there's – A mental health specialist is not going to make my gynecomastia go away. . . . I haven't – I decided to not really purs- -- you know, ask for medical treatment when it comes to that." PRDSOF, Ex. B, 173:15-21. Furthermore, Altez (and Santos and Locke) would not have treated Plaintiff for mental health difficulties, thus further undermining any claim against them for deliberate indifference. Accordingly, for the alternative reason that Plaintiff fails to establish the subjective prong of his deliberate indifference claim, summary judgment is granted in favor of Altez.

## C. Plaintiff's Claim of an Unconstitutional Custom or Policy Fails Because There is No Underlying Constitutional Violation

The Court briefly addresses Plaintiff's Monell claim. According to Plaintiff, Dart and Mennella are liable in their official capacities because of (1) the lack of policies governing the provision of pain medications to inmates; and (2) the lack of formal policies at CCDOC setting forth the circumstances under which basic pain medication should be prescribed to inmates by

19

medical staff. Where the predicate constitutional violation fails, a Monell claim necessarily fails as well. Sallenger v. City of Springfield, Ill., 630 F.3d 499, 505 (7th Cir. 2010) ("[B]ecause there is no underlying constitutional violation, the City cannot be liable under Monell."). Therefore, summary judgment is granted in favor of Dart and Mennella. Because none of Plaintiff's claims survive, indemnification is unnecessary, and summary judgment is also granted in favor of Cook County.

### III. CONCLUSION

Plaintiff's deliberate indifference claim against Altez fails because neither the objective nor the subjective components necessary to prevail are satisfied. Because there is no underlying constitutional violation, Plaintiff's Monell claims as to Dart and Mennella necessarily fail as a matter of law. Finally, with all claims extinguished, indemnification in this case is moot, and thus Plaintiff's claim against Cook County cannot survive. Accordingly, for the reasons stated above, Defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

*[signature]*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 27, 2017